# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                                       Telephone: (212) 317-1200
New York, New York 10165                                              Facsimile: (212) 317-1620

July 26, 2018

**VIA ECF**

Hon. Vernon S. Broderick
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

               **Re:**   *Miranda, et al. v. Grace Farms, Inc., et al*
                        Case No. 16-cv-1369 & 16-cv-7704

Your Honor:

      This office represents Plaintiffs Ayde Mena Amaro, Enrique Sanchez Vielma, Irving Ramos Franco, Paulino Ramales Bravo, and Miguel Rivera ("Plaintiffs") in the above-referenced matter. We submit this letter, together with Defendants' counsel, to respectfully request that the Court approve the settlement reached between Plaintiffs and Defendants Unak Grocery Corp. (d/b/a Liberty Café), Liberty Food & Grocery Corp Inc. (d/b/a Liberty Café), Grace Farms, Inc. (d/b/a City Café), and Vivek Singhal ("Defendants" and together with Plaintiffs, the "Parties").

      The Parties have agreed to a negotiated Settlement Agreement (the "Agreement") after extensive settlement discussions. The proposed Agreement is attached hereto as **Exhibit A.** We therefore ask the Court to approve the settlement, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015).

      The Parties represent to the Court that while the Plaintiffs believe that the settlement amount is less than what they would be entitled to if she prevailed at trial, that the settlement is fair, as discussed herein.

**Background**

      Plaintiffs were employed by Defendants to work at two diners, one of which is located at 37 W. 43rd Street, New York, New York 10036 (hereinafter, "Liberty Café"), and the other located at 35 W. 43rd Street, New York, New York 10036 (hereinafter, "City Café")

      Plaintiff Ayde Mena Amaro ("Plaintiff Mena") was employed by Defendants as a cashier from approximately September 2008 until on or about September 2, 2016. From approximately September 2010 until on or about June 2013, Plaintiff Mena worked approximately 46 hours per week. From approximately July 2013 until on or about September 2, 2016, Plaintiff Mena worked approximately 43.5 hours per week. Throughout her employment, Plaintiff Mena was paid her wages in cash. From approximately September 2010 until on or about June 2013, Defendants paid

Plaintiff Mena $9.00 per hour. From approximately July 2013 until on or about September 2, 2016, Defendants paid Plaintiff Mena $10.00 per hour.

Plaintiff Enrique Sanchez Vielma ("Plaintiff Sanchez") was employed by Defendants as a delivery worker from approximately January 2010 until on or about July 2017. From approximately September 2010 until on or about April 2012, Plaintiff Sanchez typically worked 63 hours per week. From approximately April 2012 until on or about July 2017, Plaintiff Sanchez typically worked 46.5 hours per week. Throughout his employment, Plaintiff Sanchez was paid his wages in cash. From approximately September 2010 until on or about April 2012, Defendants paid Plaintiff Sanchez a fixed salary of $375 per week. From approximately April 2012 until on or about July 2017, Defendants paid Plaintiff Sanchez a fixed salary of $360 per week.

Plaintiff Irving Ramos Franco ("Plaintiff Ramos") was employed by Defendants as a delivery worker from approximately December 2010 until on or about April 2016. From approximately December 2010 until on or about December 2013, Plaintiff Ramos typically worked 61.25 hours per week. From approximately December 2013 until on or about April 2016, Plaintiff Ramos typically worked 52.5 hours per week. Throughout his employment, Plaintiff Ramos was paid his wages in cash. From approximately December 2010 until on or about December 2013, Plaintiff Ramos was paid a fixed salary of $180 per week. From approximately December 2013 until on or about April 2016, Plaintiff Ramos was paid a fixed salary of $200 per week.

Plaintiff Miguel Rivera ("Plaintiff Rivera") was employed by Defendants as a delivery worker from approximately December 2012 until on or about July 2017. From approximately December 2012 until on or about May 2014, Plaintiff Rivera typically worked 60 hours per week. From approximately June 2014 until on or about July 2017, Plaintiff Rivera typically worked 45 hours per week. Throughout his employment, Plaintiff Rivera was paid his wages in cash. Throughout his employment, Defendants paid Plaintiff Rivera $330 per week.

Plaintiff Paulino Ramales Bravo (a.k.a. Paul Estrada) ("Plaintiff Ramales") was employed by Defendants as a salad preparer, cook and counter attendant from approximately December 2012 until on or about July 2017. From approximately December 2012 until on or about December 2013, Plaintiff Ramales typically worked 57.5 hours per week. From approximately December 2013 until on or about March 2015, Plaintiff Ramales typically worked 47.5 hours per week. From approximately March 2015 until on or about July 2017, Plaintiff Ramales typically worked 55 hours per week. Throughout his employment, Plaintiff Ramales was paid his wages in cash. From approximately December 2012 until on or about December 2013, Defendants paid Plaintiff Ramales a fixed salary of $440 per week. From approximately December 2013 until on or about March 2015, Defendants paid Plaintiff Ramales a fixed salary of $450 per week. From approximately March 2015 until on or about July 2017, Defendants paid Plaintiff Ramales a fixed salary of $460 per week.

Plaintiffs therefore brought this action seeking to recover unpaid overtime wages, spread of hours, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the New York Minimum Wage Act,

N.Y. Lab. Law §§ 650, *et seq*., and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

Defendants deny Plaintiff's allegations and have produced documents that they allege prove that Plaintiffs were paid in accordance with the law. After weighing the risks of trial and costs of further litigation, the Parties have reached an agreement at an early stage.

**Settlement**

The Parties have agreed to resolve this action for the total sum of $210,000.00 which will be paid as outlined in **Exhibit A**. Plaintiffs estimated that, in a best case scenario, they would be entitled to approximately $199,000.00 in minimum and overtime base damages. However, if Defendants were to succeed in proving that Plaintiffs were paid in accordance with the law, they estimate that the Plaintiffs would be entitled much less, if anything at all.

One-Hundred and Forty Thousand Dollars ($140,000.00) of the settlement amount will be paid to the Plaintiffs. The remaining Seventy-Thousand Dollars ($70,000.00) will be applied as attorneys' fees and costs.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to the Plaintiffs. Plaintiffs have been represented by counsel throughout this lawsuit and have made an informed decision to settle the action, without incurring the costs or encumbrance of lengthy trial. The Two-Hundred and Ten Thousand dollars ($210,000.00) that they will be receiving accounts for a significant portion of any alleged unpaid minimum and overtime wages that they could have potentially recovered at trial, as well as attorneys' fees. This recovery is also well over what the Plaintiffs would recover if Defendants were to successfully use their records to establish that Plaintiffs were paid in accordance with the law. Furthermore, the Agreement is the product of arm's-length bargaining between experienced counsel and there is no possibility of fraud or collusion.

**The Plaintiffs' Attorneys' Fees are Fair and Reasonable**

Hon. Vernon Broderick
July 26, 2018
Page 4 of 5

Under the settlement, Plaintiffs' counsel will receive $70,000 from the settlement fund as attorneys' fees and costs. This represents one-third of the Settlement amount, a reduction in fees from what is identified in the Plaintiffs' retainer agreement, which provides that forty percent of the Plaintiffs' recovery will be retained by the firm.

The amount provided to the Plaintiffs' counsel under the settlement is fair and reasonable as it is consistent with the range of fees typically awarded in cases in this Circuit. *See* Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also* Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; *see also* McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Given the Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, the Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Parties' cooperative exchange of information and frequent negotiations.

Attached hereto as **Exhibit B**, are the Plaintiffs' attorneys' time records. A brief biography of each attorney who performed billed work in this matter is as follows:

- Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

- Sara Isaacson is an associate at Michael Faillace & Associates, P.C. She graduated from Benjamin N. Cardozo School of Law in 2015. During law school, Ms. Isaacson worked as a law clerk at the employment firm of Virginia & Ambinder, LLP. After graduating law school, Ms. Isaacson worked at a commercial litigation firm which also specialized in the defense of wage and hour litigation. Since joining Michael Faillace & Associates, P.C. in May 2017, she has been responsible for all aspects of the firm's employment docket in federal court.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and the Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

Hon. Vernon Broderick
July 26, 2018
Page 5 of 5

**Conclusion**

    Plaintiffs have been represented by counsel throughout this lawsuit, and Plaintiffs' counsel has agreed to the settlement amount based on the approval of their clients. Plaintiffs' interests have thus been adequately safeguarded.

    In full consideration of the issues presented in *Cheeks,* we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved. A Stipulation of Final Dismissal will be filed for so-ordering after execution of the agreement and upon receipt of confirmation from the Court that the settlement has been approved.

    Thank you for your consideration in this matter.

                                              Respectfully Submitted,

                                              /s/ Michael Faillace
                                              Michael Faillace, Esq.
                                              Michael Faillace & Associates, P.C.
                                              *Attorneys for Plaintiffs*

cc:    Valerie K. Ferrier, Esq. (via ECF)
         *Attorney for Defendants*