```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ARTURO DANIEL MIRANDA, et al.,                              :
                                                            :
                            Plaintiffs,                     :      ORDER
                                                            :
            -v-                                             :
                                                            :
GRACE FARMS, INC., et al.,                                  :      16-CV-1369 (VSB)
                                                            :
                            Defendants.                     :
                                                            :
-----------------------------------------------------------:
                                                            :
AYDE MENA AMARO, et al.,                                    :
                                                            :
                            Plaintiffs,                     :
                                                            :
            -v-                                             :
                                                            :
UNAK GROCERY CORP. (d/b/a Liberty Café),                    :      16-CV-7704 (VSB)
et al.,                                                     :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

On February 23, 2016, Plaintiffs Arturo Daniel Miranda, Alfonso Vera Rodas, Miguel Garcia, and Daniel Grande Netzahuatl filed a collective action against Defendants Grace Farms, Inc. d/b/a City Café, Unak Grocery Corp. d/b/a Liberty Café, Rajni Singhal, and Vivek Singhal, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and the New York Labor Law ("NYLL") (the "Miranda Action"). (*See generally* Doc. 1.)

On December 9, 2016, I consolidated the Miranda Action with a related action, *Amaro, et al. v. Unak Grocery Corp., et al.*, 16-cv-7704 (the "Amaro Action"), involving different plaintiffs but the same or similar Defendants. (*See* Doc. 35.) In that Order, I directed the parties to place any future filings on the docket of the first-filed case, No. 16-cv-1369. (*Id.* at 2.)

1

On January 30, 2017, Plaintiffs from the Miranda Action and Amaro Action filed a consolidated collective action complaint in this matter. (Doc. 45.) Plaintiffs alleged various violations of the FLSA and NYLL including that Defendants failed to pay them overtime compensation for all hours worked in excess of forty hours per week and failed to pay spread-of-hours pay. (*See id.*)

During a status conference on July 18, 2018, the parties informed me that they had reached a settlement with respect to Plaintiffs' claims. (*See* Doc. 92.) Parties may not privately settle FLSA claims absent the approval of the district court or the Department of Labor. *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 806–07 (2d Cir. 2022); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). In the absence of Department of Labor approval, the parties must demonstrate to this Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). Accordingly, I directed the parties to file a joint letter attaching the settlement agreement and explaining how the terms of their proposed settlement were fair and reasonable. (*See* Doc. 92.)

On July 26, 2018, the parties filed two separate letters attaching two separate proposed settlement agreements; one letter attached a proposed agreement between the plaintiffs and defendants that were originally parties to the Miranda Action (the "Miranda Parties"), and the other letter attached a proposed agreement between the plaintiffs and defendants that were originally parties to the Amaro Action (the "Amaro Parties"). (*See* Docs. 93, 94.) By Order dated May 28, 2019, I rejected the proposed agreement between the Amaro Parties and Defendants on the ground that it contained an overbroad release, and I declined to consider the agreement between the Miranda Parties and Defendants, or the proposed settlement amounts and attorneys' fees contained in the agreement with the Amaro Parties, because I intended to consider the two agreements in tandem. (Doc. 72.)

On June 14, 2019, the Amaro Parties filed a stipulation amending the settlement agreement that contained a revised version of the release I had previously found objectionable. (No. 16-cv-7704, Doc. 73.) However, they filed this stipulation on the docket of Case No. 16-cv-7704, which had been closed. (*See id.*) On April 29, 2020, the Amaro Parties refiled this stipulation on the docket of Case No. 16-cv-1369, but it was administratively rejected by the Clerk. (Doc. 100.) On June 9, 2020, the Amaro Parties properly refiled the proposed stipulation ("Revised Release"). (Doc. 101.)

I rejected the second proposed settlement agreement among the Amaro Parties, because I found it was still not fair and reasonable. (Doc. 104.) On its face, I found the second proposed settlement agreement's provisions regarding the release of claims overbroad. (*See id.* at 4–5). As such, I did not consider the settlement agreement amount among either the Amaro Parties or the Miranda Parties. (*Id.* at 6.) I also identified what appeared to be a typo in the release of claims language in the settlement agreement in the Miranda Action. (*Id.* at 6–7.)

On December 22, 2020, counsel for the Plaintiffs in the Miranda Action filed a revised settlement agreement, (Doc. 105-1), in light of the typo that had been identified, (Doc. 105). On March 3, 2021, counsel for the Plaintiffs in the Amaro Action filed a stipulation amending their prior settlement agreement. (No. 16-cv-7704, Doc. 81.)

Having reviewed the materials before me, I find that the operative settlement agreement among the Miranda Parties (the "Miranda Settlement" or "Miranda Agreement") is still not fair and reasonable. I also find that the settlement agreement among the Amaro Parties (the "Amaro Settlement" or "Amaro Agreement") is not fair and reasonable.

I. **Legal Standard**

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range

of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.* The Second Circuit has described a presumptively reasonable fee as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (citation omitted). A fee may not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 2020 WL 550470, at *6 (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

## II. Discussion

### A. *Non-Monetary Provisions*

The Amaro Settlement's non-monetary provisions independently appear to be fair and reasonable. However, the same cannot be said of the Miranda Settlement's non-monetary provisions. Accordingly, I cannot approve the Miranda Settlement.

4

1.  Release Clauses

I begin with the clauses releasing Defendants across both actions from liability, as those were both an issue in my most recent analysis of the settlement agreements. I find that the releases in the most recent settlement agreements in both of these consolidated FLSA actions have been narrowed sufficiently to allay the concerns I identified previously.

The previous version of the Amaro Settlement contained a clause entitled "Release and Covenant not to Sue," which reads:

> Plaintiffs knowingly and voluntarily release and forever discharge Defendants of and from any and all claims at issue in this action, whether known or unknown, asserted or unasserted, arising up to and as of the date of the execution of this Agreement, which Plaintiffs have or may have against Defendants, and also covenants not to file any claim or suit alleging a violation of any federal or state wage and hour laws including, but not limited to, the Fair Labor Standards Act and the New York Labor Law.

(Doc. 80, at 5.) Because the portion following "covenants not to file" was not "limited in time and scope," I found it improper under the standards for approval of FLSA settlements. (*Id.*) By contrast, the operative release language in the Amaro Settlement now provides that

> Plaintiffs knowingly and voluntarily release and forever discharge Defendants of and from any and all claims at issue in this action, whether known or unknown, asserted or unasserted, arising up to and as of the date of the execution of this Agreement, which Plaintiffs have or may have against Defendants, and also covenants not to file any claim or suit alleging a violation of any federal or state wage and hour laws including, but not limited to, the Fair Labor Standards Act and the New York Labor Law, arising up to and as of the date of the execution of this Agreement.

(Doc. 81.) This language thus obviates the previously identified issues of overbreadth of the release through the addition of language limiting the time period to which the "covenants not to file" language applies.

Similarly, the Miranda Settlement states that "Plaintiffs hereby covenant and agree not to sue" over "any claims that are referred to in paragraph two (2) of this agreement." (Doc. 105-1 ¶ 3(c).) Paragraph two provides releases to Defendants and certain defined "Releasees," who include

5

Defendants, from claims . . . "arising out of the allegations set forth in th[e] [Miranda] Action," and only through "the date th[e] [Miranda] Agreement is executed." (*Id.* ¶ 2(a).) This is sufficiently narrow, as it does not waive claims that may accrue later in time or claims that may have nothing to do with the labor issues that form the basis of the Miranda Action. *Cf. Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) ("In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015))).

### 2. Other Provisions

The Miranda Settlement fails to pass muster because it contains a clause that restricts the Miranda Plaintiffs' future employment. Paragraph 3(e) of the Miranda Settlement states that

> should Plaintiffs again apply to work at or for Defendants/Releases in any capacity, Defendants/Releases, based on this clause, may deny Plaintiffs employment for any position they seek, and said denial will not be a violation of any . . . law . . . and will not be retaliatory in any way.

"Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." *Diaz Bravo v. Broadway Fines Deli Corp.*, 21-CV-1946 (VSB), 2021 WL 4263047, at *2 (S.D.N.Y. Aug. 4, 2021) (quoting *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216 (KMK), 2020 WL 5894603, at *5 (S.D.N.Y. Oct. 5, 2020)). The Miranda Plaintiffs do not even address this clause in their letter motion in support of settlement approval. (*See* Doc. 93.) The Miranda Plaintiffs' counsel's use of this clause cannot be justified given the law in this District. I thus do not approve the Miranda Settlement.

Both Settlements also contain non-disparagement clauses, but these clauses have carveouts to allow the parties to "truthfully communicat[e] their experiences concerning the [respective] Action[s] or the [respective] Settlements." (*See* Doc. 105-1 ¶ 7; Doc. 66-1 ¶ 23 ("The Parties agree

not to disparage each other. Nothing herein shall prevent the Plaintiffs from speaking truthfully about this case.").) These clauses are proper given FLSA settlement practice in this District. *See Baikin v. Leader Sheet Metal, Inc.*, 16 Civ. 8194 (ER), 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017) ("Courts in this District have held that while not all non-disparagement clauses are *per se* objectionable, if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." (citation omitted)).

### B. *Settlement Amounts*

When assessing the fairness of a settlement amount in a FLSA action, courts in this circuit consider a "maximum possible recovery," which includes all possible bases entitling a FLSA plaintiff to monetary relief, such as "liquidated damages." *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322 (S.D.N.Y. 2021); *Zorn-Hill v. A2B Taxi LLC*, Case No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) ("The percentages provided by the Parties undercount the [p]laintiffs' alleged damages and best-case return" because "they do not include liquidated damages"); *Vargas v. Pier 59 Studios L.P.*, 18-CV-10357 (VSB), 2020 WL 8678094, at *1 (S.D.N.Y. Sept. 10, 2020) ("Plaintiff's calculation of potential recovery does not appear to include the possibility of liquidated damages, which FLSA authorizes at a rate of 100 percent of unpaid wages"). Because of this, parties seeking approval of a FLSA settlement must supply calculation addressing all possible sources of a plaintiff's potential damages. *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, 19-CV-2967 (VSB), 2022 WL 576300, at *2 (S.D.N.Y. Feb. 25, 2022) (calculating damages based on "unpaid minimum wage, unpaid overtime premiums, unpaid spread of hours premiums, liquidated damages, wage notice and wage statement damages, and interest as of the date of the mediation statement." (internal quotation marks omitted)); *Kanchanawong v. Amobee, Inc.*, 21-CV-4409 (VSB), 2021 WL 6500139, at *2

(S.D.N.Y. Dec. 27, 2021) (assessing a settlement breaking down the sources of possible damages as stemming from "around $51,000 in unpaid wages, $51,000 in liquidated damages, and $10,000 for violations of the Wage Theft Prevention Act."); *Galindo v. E. Cnty. Louth Inc.*, 16 Civ. 9149 (KPF), 2017 WL 5195237, at *4 (S.D.N.Y. Nov. 9, 2017) ("The settlement amount that Plaintiff is to receive, $5,292, would cover all back wages, liquidated damages, and statutory penalties.").

Here, because the parties have failed to supply sufficient information, I cannot say that either Settlement's amount is fair and reasonable.

The Miranda Settlement provides that the Miranda Plaintiffs will receive $80,000, inclusive of attorneys' fees and costs. (Doc. 93-1 ¶ 1.) Counsel for the Miranda Plaintiffs state that the Miranda Plaintiffs stood to recover "approximately $146,531.83 . . . not including liquidated damages and statutory penalties." (Doc. 91, at 1.) The settlement amount— $80,000—thus represents approximately 54% of the possible stated recovery not accounting for liquidated damages and statutory penalties. However, the Miranda Plaintiffs' counsel must account for liquidated damages, as well as for the other sources of damages pleaded in the operative complaint. (*See* Doc. 45, at 39 (demanding damages for "unpaid minimum and overtime wages, and for any improper deductions . . . as well as awarding spread of hours pay under the NYLL," and for, among other things, "violation of the NYLL notice and recordkeeping provision" and "liquidated damages.").) Here, considering potential liquidated damages, the Miranda Settlement's $80,000 amount actually reflects approximately 27% of the total possible recovery. Factoring in other sources of damages, if any are applicable, would likely lower this percentage further, but the Miranda Plaintiffs' counsel have not supplied the necessary information for me to assess what the percentage would be, nor have they argued why such a recovery would be fair and reasonable.

8

The Amaro Settlement provides for a gross settlement amount of $210,000, with $140,000 to be paid to the Amaro Plaintiffs, and $70,000 in attorneys' fees and costs.[1] (Doc. 66, at 3.) The Amaro Plaintiffs' counsel states that they estimate the Amaro Plaintiffs stood to recover approximately $199,000 "in minimum and overtime base damages." The Amaro Plaintiffs' counsel do not explain how they calculated this amount or whether there are other possible sources entitling the Amaro Plaintiffs to damages. They do not address the various sources of damages they assert in their operative complaint. (*See* Doc. 45, at 39.) Accordingly, if the Amaro Plaintiffs have a case for seeking liquidated damages, their maximum possible recovery would be at least $398,000. The $210,000 amount would be approximately 52% of that number. However, as with the Miranda Plaintiffs, the Amaro Plaintiffs have not explained if there are other sources in law that might entitle them to damages.

Without more transparency into the maximum possible recovery, I cannot find either settlement fair or reasonable.

### III. Conclusion

For the reasons stated above, I find that neither settlement is fair and reasonable as it has been presented to me. The Amaro Settlement may well be; however, the Amaro Plaintiffs' counsel will need to explain with transparency how they calculated their clients' maximum possible recoveries and why the settlement amount is fair and reasonable when measured against that amount. The same is true for the Miranda Plaintiffs. Additionally, as discussed, the Miranda Settlement is not fair and reasonable because of its clause restricting future employment. Accordingly, both settlements are REJECTED.

---

[1] The propriety of attorneys' fees is discussed *infra*. I note here that the Amaro Settlement itself only states that "Defendants shall pay" a total of "$210,000" to the Amaro Plaintiffs' counsel, with the further allocation of that money to be handled at "the sole responsibility of the Plaintiffs and their counsel." (Doc. 66-1 ¶ 1.) This should not matter to the certainty that the Amaro Plaintiffs will receive at least $140,000 as part of the Amaro Settlement, as counsel must know it is bound by the representations it has made in their filing to me.

The parties may proceed by filing revised settlement agreements and new letters explaining why the revised settlement agreements are fair and reasonable within forty-five (45) days of the date of this Order. The parties must not file stipulations or amendments to their settlements as they have in the past, but must present self-contained settlement agreements for my review. If the parties do not make these filings within the deadline set by this Order or otherwise do not submit a filing regarding how they intend to proceed, I will construe that as an intention to abandon settlement, and I will set a date for a status conference.

SO ORDERED.

Dated: May 31, 2022
New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge